UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CORTEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JIM HART, et al.,<br><br>　　　　　Defendants. | Case No. 22-cv-06023 EJD (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>(Docket No. 20) |

　　　　Plaintiff, a pretrial detainee, filed the instant pro se civil rights action pursuant to 42 U.S.C. § 1983 against officers at the Santa Cruz County Jail ("Jail"), where he is currently confined.  Dkt. No. 1.  This action is proceeding solely on the excessive force claims against Defendants J. Ainsworth and R. Seavers.  Dkt. No. 14.[1]

　　　　Defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) because the complaint fails to state sufficient facts to state a claim and they are entitled to qualified immunity.  Dkt. No. 20.  Plaintiff filed opposition, Dkt. No. 27-1, and Defendants filed a reply, Dkt. No. 28.

　　　　For the reasons discussed below, Defendants' motion is **GRANTED**.

## DISCUSSION

**A.**　**Motion to Dismiss**

　　　　Failure to state a claim is grounds for dismissal under Rule 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to

---

[1] After Plaintiff filed notice, the Court dismissed all other claims against other defendants without prejudice, including a failure to protect claim, supervisor liability claim, and claims against John Doe defendants.  Dkt. Nos. 12, 14.

relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Dismissal for failure to state a claim is a ruling on a question of law. See Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995).

Review is limited to the contents of the complaint, see Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). In addition, the court may take judicial notice of facts that are not subject to reasonable dispute. See id. at 689 (discussing Fed. R. Evid. 201(b)). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. See Symington, 51 F.3d at 1484.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…. Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." Id. at 570. "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

A pro se complaint must be liberally construed and "may be dismissed for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) (citations and internal quotation marks omitted).

Qualified immunity may be raised in a Rule 12(b)(6) motion and granted where defendants are entitled to the defense based on plaintiff's allegations. Cousins v. Lockyer, 568 F.3d 1063, 1071 (9th Cir. 2009).

### B. **Plaintiff's Allegations**

Plaintiff claims that on November 2, 2020, Defendant Lt. Jacob Ainsworth, "cho[]se to assault me and cause wanton pain." Dkt. No. 1 at 3. He also claims that Defendant R. Seavers, a classification supervisor, "cho[]se to maliciously spray [Plaintiff] with a chemical agent while [he] was sitting down in a secure room while having [his] hands mechanically restrained behind [his] back" and that she did so "even after [Plaintiff] told her [he] pose[d] no danger to [himself] nor anybody else." Id.

The Court may also consider the allegations contained in the exhibits attached to the complaint. See Lee, 250 F.3d at 688. Plaintiff provides a copy of a jail grievance in which he claims that Defendant Ainsworth "physically harmed" him on November 2nd. Id. at 5. Plaintiff states that he refused to go to the cell due to staff negligence. Id. He was then handcuffed "and dragged" to a room. Id. On the way, he knelt on a stair well and then Defendant Ainsworth began bending his wrist "in a manner that caused unnecessary harm." Id. When Plaintiff told him that he was hurting his hand, Defendant replied, "well move and I'll stop." Id. Plaintiff claimed that that the action amounted to "corporal punishment" which violated his rights under the Eighth Amendment to be free from cruel and unusual punishment. Id. Plaintiff asserts that he did "nothing that constitutes officer to inflict pain." Id.

Plaintiff also provides a copy of a grievance against Defendant Seavers. Dkt. No. 1 at 6. Plaintiff alleged that Defendant Seavers assaulted him with a chemical spray (pepper spray). Id. Plaintiff claims it was used "in a maliciously and sadistic form as such act was unnecessary." Id. Plaintiff was in a cell, "sitting down with hands mechanically handcuffed behind [his] back, presenting no danger to anyone nor myself." Id. Then Defendant Seavers approached his door and told him that she was going to spray Plaintiff if he did not un-cuff. Id. Plaintiff claims she said this in a "taunting manner as she had

3

pepper spray in hand and was waving it back and forth." Id. Plaintiff asked her "why when I'm in a cell cuffed and sitting." Id. Plaintiff alleges that she then sprayed him, and threatened to do so again "while the whole time I remained in the same position." Id. Plaintiff claimed that her actions violated his Eighth Amendment rights. Id.

The staff response to the wrist bending incident states that Plaintiff was given multiple opportunities and direct orders to return to his cell by staff members, and that several of them spent an extended amount of time trying to reason with him. Dkt. No. 1 at 5. Due to Plaintiff's decision not to return to his cell or follow the direct orders of staff, "reasonable force was used to obtain compliance and ensure safety and institutional security in accordance with Sheriff's Office Policy." Id.

The staff response to the pepper spraying incident states that after officers gave Plaintiff several verbal commands and a "cooling off period," Plaintiff still refused to come to his cell door to get the handcuffs removed. Dkt. No. 1 at 6. "Therefore a higher level of force was used." Id.

Both grievances were denied as the use of force incidents were found to be reasonable and in compliance with the Sheriff's Office Policy. Id. at 5, 8.

## C. Excessive Force

Inmates who sue prison officials for damages for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted like Plaintiff, under the Fourteenth Amendment's Due Process Clause. See Bell v. Wolfish, 441 U.S. 520, 535 (1979); Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc). But under both clauses, the inmate must show that the prison official acted with deliberate indifference. Id. at 1068. The Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial detainee from the use of excessive force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535-39. 1979)).

To prove an excessive force claim under § 1983, a pretrial detainee must show only that the "force purposely or knowingly used against him was objectively unreasonable."

4

United States District Court
Northern District of California

Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015).[2]  "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Id.  "A court (judge or jury) cannot apply this standard mechanically."  Id.  "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'"  Id. (quoting Graham v. Connor, 490 U.S. at 396).  Accord Lombardo v. City of St. Louis, 141 S. Ct. 2239, 2241-42 (2021) (per se rule that use of prone restraint is constitutional so long as individual appears to resist officers' efforts to subdue him would be improper because it would "contravene the careful, context-specific analysis required" in excessive force cases).

A non-exhaustive list of considerations that may bear on the reasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  Kingsley, 576 U.S. at 397.

Because the Kingsley standard applicable to excessive force claims by pretrial detainees is purely objective, it does not matter whether the defendant understood that the force used was excessive or intended it to be excessive.  Castro, 833 F.3d at 1069.  A pretrial detainee can prevail by providing "'objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.'"  Id. (quoting Kingsley, 576 U.S. at 397-98)) (emphasis in original).

Defendants assert that Defendant Ainsworth's use of force was justified by Plaintiff's refusal to return to his cell.  Dkt. No. 20 at 5.  Defendants assert that Plaintiff admits that he refused to go to his cell, that only after he knelt on the stair well did

---

[2] In their motion, Defendants applied the wrong subjective standard under Hudson v. McMillian, 503 U.S. 1 (1992), which applies to claims raised by convicted inmates alleging excessive force under the Eighth Amendment.  Dkt. No. 20 at 5.  Defendants later cite to Kinglsey in their reply.  Dkt. 28 at 2.

5

Defendant Ainsworth bend his wrist, and that there is no assertion of continuing or permanent injury. Id. at 6. Defendants also assert that Defendant Seavers warned Plaintiff of her intent to use pepper spray to gain compliance with a lawful order. Id. Defendants assert Plaintiff admits that Defendant Seavers wanted to uncuff him and that Defendant Seavers provided a warning before spraying him. Id. at 7. Defendants conclude that based on these undisputed allegations, their actions did not violate Plaintiff's rights.

In opposition, Plaintiff does not dispute that he refused to go to his cell or that Defendants were acting in response to his actions. Rather, he disputes whether their actions were reasonable when he was not resisting or being hostile, but merely "non-compliant." Dkt. No. 27-1 at 3, 6. Plaintiff asserts Defendant Ainsworth could have taken alternative options, such as having officers carry him to his cell, rather than applying force to his wrist in a "sadistic and malicious manner." Id. at 3-4. Plaintiff also asserts that rather than spraying him, Defendant Seavers could have agreed to Plaintiff's request for supplies or that staff in riot gear could have come into his cell sooner. Id. at 6. Lastly, Plaintiff argues that Defendants' actions violated the Sheriff's Office policy for use of force such that their use of force was excessive and unnecessary. Id. at 5-7. Plaintiff asserts for the first time that as a result of the incident, he suffered mental distress (e.g., stress, anxiety, depression) which has been treated with "psych medications" taken daily to help cope with his symptoms. Id. at 8.

In reply, Defendants assert that Plaintiff does not dispute the Defendants' clear purpose to maintain jail security by securing Plaintiff's compliance with their orders, and that he provides no basis for the conclusion that he is permitted to refuse orders and dictate which of the reasonable measures that Defendants employ to secure his compliance and maintain the security of the jail. Dkt. No. 28 at 2. Defendants assert that Plaintiff's complaint and his admissions in opposition demonstrate the necessity of using force and that their actions were constitutional. Id. at 3.

With regard to Plaintiff's claim that Defendants failed to take into account several factors under the Sheriff's Office use of force policy, it is not cognizable. The failure to

6

1  adhere to prison policy or regulations *per se* is not sufficient to state a cognizable claim
2  under § 1983 which involves the violation of rights under the Constitution or federal law.
3  Accordingly, the Court will not address whether Defendants' actions violated or were
4  inconsistent with their own policy.  The Court will consider only those parts of Plaintiff's
5  arguments that are relevant to weighing the reasonableness of Defendants' actions under
6  Kingsley.

### 1. Defendant Ainsworth

Taking the allegations in the complaint as true and construing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to show that Defendant Ainsworth's use of force was objectively unreasonable.  First, Plaintiff admits that he refused to return to his cell "due to staff negligence"[3] on November 2, 2020.  See supra at 3.  The grievance response indicates that Plaintiff was given multiple opportunities and direct orders to return to his cell, and that several officers spent an extended amount of time speaking with Plaintiff trying to reason with him.  Dkt. No. 1 at 5.  Due to Plaintiff's decision to not return to his cell or follow the direct orders, staff used force to obtain his compliance and ensure safety and institutional security.  Id.  Plaintiff does not dispute that the above circumstances is what preceded Defendant Ainsworth's escort back to his cell.  Rather, he contends that when he inexplicably knelt on the stair well during the escort, Defendant Ainsworth applied unnecessary force to Plaintiff's wrist.  Id.  In opposition, Plaintiff provides a copy of the related grievance, in which he provided more details regarding this incident:

> We came upon some stairs and about the third or fourth step I choose [*sic*] to kneel down. Officer Ainsworth told me to move to which I said no. He then choose [*sic*] to bend my wrist in an unusual manner. I advised him he was hurting me to which he simply said, "Well move and I'll stop." I again said no so he again bent my wrist to which I again informed him he was hurting me.

Dkt. No. 27-1 at 13.

---

[3] Plaintiff does not explain how the staff was negligent nor how the alleged negligence justified or excused his refusal to return to his cell.

7

Weighing the Kingsley factors indicates that Defendant Ainsworth's use of force was reasonable. First of all, the relationship between the need for the force (Plaintiff's halt on the stair well and repeated refusal to move when ordered to do so) and the amount of force used (bending Plaintiff's wrist) indicate that the force used was reasonable to gain Plaintiff's compliance. Furthermore, regarding the effort to temper or limit the force applied, this factor also weighs in favor of reasonableness as Defendant Ainsworth first ordered Plaintiff to move before he began bending Plaintiff's wrist in order to obtain compliance with a direct order, *i.e.*, to return to his cell, and Defendant stopped the force once Plaintiff resumed movement. Thirdly, a reasonable officer would have perceived that Plaintiff's refusal to return to his cell presented a legitimate security interest and that escorting him back to his cell as soon as possible would minimize any further threat. Lastly, Plaintiff was actively resisting when he decided to halt and kneel on the stair well. Plaintiff attempts to characterize his actions as merely "non-compliant" rather than "hostile" or "aggressive," but he is simply arguing over semantics: non-compliance to an order is no different from resisting it. Defendants have set forth several cases showing that use of force does not violate the Fourteenth Amendment when used after an inmate does not comply with reasonable orders. Dkt. No. 20 at 5-6, citing Brown v. L.A. Sheriff Dep't (C.D. Cal. Mar. 29, 2021, No. CV 15-0483 FMO (JEM)) 2021 U.S.Dist.LEXIS 61321, at *20, fn. 8 (no excessive force where inmate alleged pain, "but does not allege any injury" from being pushed into wall while resisting return to cell), affirmed in Brown v. Los Angeles Cnty. Sheriff's Dep't, 2022 U.S. App. LEXIS 31496 (9th Cir. Nov. 15, 2022); see also Gomez v. Birondo (N.D. Cal. June 24, 1993, No. C-90-3111-JPV) 1993 U.S.Dist.LEXIS 8773, at *6 (no excessive force when grabbing an inmate by the neck after refusing orders to return to cell); Uerling v. Piccinini, No. C 98-3790 CRB (PR), 1999 U.S. Dist. LEXIS 5424, 1999 WL 225981, at *2 (N.D. Cal. Apr. 12, 1999), affirmed in Uerling v. Piccinini, 238 F.3d 4333 (9th Cir. 2000). The undisputed facts in the instant case are similar to Brown and Uerling in that Plaintiff also was not complying with direct orders to return to his cell which lead to officers applying reasonable force to gain his compliance.

Plaintiff asserts that Defendants could have used an alternative option of having officers carry him back to his cell. However, this option would have involved an even greater use of force on Plaintiff's whole body all the way to his cell and involved additional officers, which would have increased the likelihood of injury to Plaintiff and others, especially since Plaintiff was in a stair well at the time. Accordingly, it cannot be said that such an option was a reasonable alternative that weighs against the reasonableness of Defendant Ainsworth's otherwise de minimus use of force of bending Plaintiff's wrist just long enough to gain his compliance. Based on the foregoing, Plaintiff's allegations, taken as true, are insufficient to show that Defendant Ainsworth's use of force was not rationally related to a legitimate governmental objective of gaining control over a resisting inmate or that it was excessive in relation to that purpose. Because it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, Defendants' motion to dismiss this claim should be granted with prejudice. See Weilburg, 488 F.3d at 1205.

### 2. **Defendant Seavers**

Taking the allegations in the complaint as true and construing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to show that Defendant Seavers' use of force was objectively unreasonable. First, Plaintiff admits that he refused to uncuff when ordered to do so. See supra at 4. In opposition, Plaintiff provides a copy of the related grievance, in which he provided more details regarding this incident:

> They then left me unattended in Room Q-12 while I was handcuffed about hour and a half… [S]everal staff in riot gear and some in daily uniform come attempt to get cuffs off me again [sic]. C/O Rachel Seavers says to me, "Come uncuff or I'm going to have to spray you with pepper spray" to which I say "No, and why are you going to spray me when I'm handcuffed and sitting down not a threat to anybody." She then said "Well come uncuff and we won't have to spray you." I said to her, "Well can you get me some scrub pads and cleaning supplies and I'll uncuff." She then said, "[W]e are past the point of negotiating," and that moment sprayed me all the while I was mechanically restrained and secured in a cell not once making threats nor hostile gestures.

Dkt. No. 27-1 at 13. Based on Plaintiff's allegations in all the submitted papers, it appears that Plaintiff first refused to uncuff after he was first placed in the cell. He was then given

a "cooling off" period, after which Defendant Seavers and other staff returned to his cell to resume attempting to uncuff Plaintiff with warnings that pepper spray would be applied if he did not comply.

Weighing the Kingsley factors shows that Defendant Seavers' use of force was reasonable. First of all, the relationship between the need for the force (Plaintiff's repeated refusal to uncuff) and the amount of force used (pepper spray) indicates that the force used was reasonable to gain Plaintiff's compliance. Furthermore, regarding the effort to temper or limit the force applied, this factor also weighs in favor of reasonableness as Plaintiff was advised to uncuff after he was first placed in the cell, given a "cooling off" period after he refused to do so, and then repeatedly warned that he would be pepper sprayed if he did not comply. Thirdly, a reasonable officer would have perceived that Plaintiff's repeated refusal to uncuff presented a legitimate penological concern and that gaining his compliance by pepper spraying him would minimize any further threat. Lastly, Plaintiff was clearly actively resisting when he repeatedly refused to have his handcuffs removed through the cell door and instead made demands as a condition to his compliance. Plaintiff was also immediately taken for decontamination by the officers in riot gear after he was sprayed. Dkt. No. 27-1 at 5. Based on these factors, Defendant Seavers' use of pepper spray was reasonable. See Spain v. Procunier, 600 F.2d 189, 195 (9th Cir.1979) (using small amounts of tear gas was not excessive "if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required"); see also Brown v. Baudino, 840 F. App'x 263 (9th Cir. 2021) (brief use of pepper spray against non-compliant inmate after repeated warnings followed by immediate medical attention was objectively reasonable under the circumstances).

Plaintiff argues that Defendant Seavers could have simply granted his request for cleaning supplies as an alternative to the use of force. However, entertaining such an option would go against legitimate penological interests in maintaining discipline and order. Plaintiff also asserts that staff in riot gear could have come in to gain his

compliance, but that too would have required additional use of force with the potential of harming Plaintiff and others. Accordingly, it cannot be said that these "options" were reasonable alternatives that weigh against the reasonableness of Defendant Seavers' use of pepper spray to obtain Plaintiff's compliance. Based on the foregoing, Plaintiff's allegations, taken as true, are insufficient to show that Defendant Seavers' use of force was not rationally related to a legitimate governmental objective of gaining control over a resisting inmate or that it was excessive in relation to that purpose. Because it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, Defendants' motion to dismiss should be granted with prejudice. See Weilburg, 488 F.3d at 1205.

## CONCLUSION

For the foregoing reasons, Defendant J. Ainsworth and R. Seavers' motion to dismiss the complaint under Rule 12(b)(6) is **GRANTED**.[4] The excessive force claims against Defendants are **DISMISSED with prejudice** for failure to state a claim on which relief can be granted.

This order terminates Docket No. 20.

**IT IS SO ORDERED.**

Dated:     December 29, 2023

EDWARD J. DAVILA
United States District Judge

---

[4] Because the Court finds no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument.